[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The sole issue remaining in this matter is whether unpaid past due support accruing prior to the petitioner's application for public assistance is now owed to her or to the State. The plaintiff mother went on public assistance with the child some eight months after the child was born. She had lived with the defendant as a family for two months after the childbirth. She had a claim for past due support from the time the couple separated until the commencement of public assistance. The state claimed that if any support was owed for that period of time it would be owed to the State pursuant to its support assignment.
In order to receive aid under various state assistance programs, a person must submit an application to the Commissioner of Social Services. "By such application, the applicant shall assign to the commissioner the right of support, present, past and future, due all persons seeking assistance." General Statutes § 17b-77.
"There are no Connecticut statutes expressly limiting the State's right to reimbursement to the amount of assistance paid to an obligee. Rather, the language of the statute and the assignment itself seems to confer upon the State the right to reimbursement for all of the support assigned to it through an application for assistance — regardless of the amount of support paid to an obligee. However, a more comprehensive review of the Federal and State statutory schemes make it apparent that not only is the State's right to reimbursement limited to the amount of assistance that it actually provided to an obligee but additionally the assignment does not apply to any uncollected support arrearage which accrued before the family received assistance or which accrue after the date the family ceases to receive assistance." Coon v. Jewett, 14 S.M.D. ___ (2000). "It is not the purpose of the child support system to create a profit center for the State at the expense of economically disadvantaged children." Busanet v. Plantier, 13 S.M.D. 273, 277 (1999).
In order to receive federal matching grants, "[a] State plan for child and spousal support must — . . . (5) provide that (A) in any case in which support payments are collected for an individual with respect to whom an assignment pursuant to section 608(a)(3) of this title is effective, such payments shall be made to the State for distribution pursuant to section 657 of this title . . .; [and] (11) (A) provide that amounts collected as support shall be distributed as provided in section CT Page 13249 657 of this title." 42 U.S.C. § 654. As part of this plan, a state "shall require . . . that a member of the family assign to the State any rights the family member may have . . . to support from any other person, not exceeding the total amount of assistance so provided to thefamily, which accrue . . . before the date the family ceases to receive assistance." (Emphasis added.) 42 U.S.C. § 608(a)(3)(A). Additionally, this assignment "shall not apply with respect to any support . . . which accrued before the family received such assistance
and which the State has not collected." (Emphasis added.) Id.
Clearly, an obligee's assignment of his or her rights of support to the State pursuant to an application for assistance is not effective as to support which accrued before the obligee received assistance nor as to support that accrues after the obligee ceases receiving assistance. Federal law explicitly mandates that an assignment of support rights to the State is limited to the amount of assistance provided to the obligee. This mandate is also expressed in the federal requirements for distribution of collected child support. In the case of a family receiving assistance from the State, federal law ordains that "[i]n no event shall the total of the amounts paid to the Federal Government and retained by the State exceed the total of the amounts that have been paid to the family as assistance by the State." 42 U.S.C. § 657(a)(1). In the case of a family that formerly received assistance, distribution of arrearage payments to the State are to be made "only to the extent necessary to reimburse amounts paid to the family as assistance by the State." 42 U.S.C. § 657 (a)(2)(B)(i)(II)(bb) and (a)(2)(B)(ii)(II)(bb). Thus the State is only entitled to reimbursement for the amount of assistance that it actually provided to a family.
Moreover, the final stages of the Personal Responsibility and Work Opportunity Reconciliation Act (PRWORA), P.L. 104-193 and the Balanced Budget Act of 1997, P.L. 105-33 set forth a detailed scheme for the distribution of arrearage support payments that essentially provides for the distribution of payments to the family first, and then collection of any arrearages owed to the State limited by the total amount of assistance provided to the family.
"A State plan for child support must provide that support payments, whether or not collected pursuant to an assignment of rights, shall be distributed pursuant to section 657. 42 U.S.C. § 654(5)(A) and (11)(A). Thus, section 657 must be examined to determine the specific requirements for distribution of collected support. In regards to families that formerly received assistance, Congress has set forth a detailed scheme for the distribution of arrearage payments that exceed the amount to be paid to the family for the month collected.42 U.S.C. § 657 (a)(2)(B). Distribution of such arrearage payments CT Page 13250 varies depending on whether the arrearage accrued after the family ceased receiving assistance, before the family received assistance or while the family received assistance. See 42 U.S.C. § 657(a)(2)(B)(i), (ii) and (iii)." Coon v. Jewett, 14 S.M.D. ___ (2000).
"The States shall . . . distribute the amount so collected . . . to the family to the extent necessary to satisfy any support arrearages with respect to the family that accrued after the family ceased to receive assistance from the State." (Emphasis added.) 42 U.S.C. § 657(a)(2) (B)(i)(II)(aa). "The State shall . . . distribute the amount so collected . . . to the family to the extent necessary to satisfy any support arrearages with respect to the family that accrued before the family received assistance from the State." (Emphasis added.) 42 U.S.C. § 657
(a)(2)(B)(ii)(II)(aa).
After these first two distributions are made, then the State is reimbursed up to the total amount of assistance provided to the family.42 U.S.C. § 657(a)(2)(B)(i)(II)(bb) and (a)(2)(B)(ii)(II)(bb). If there are arrears owing to the State which accrued while the family received assistance and there are no arrears owing to the family, then the State is reimbursed up to the total amount of assistance provided to the family. 42 U.S.C. § 657(a)(2)(B)(iii) and (a)(1). Finally, if there are no arrears owing to the family or the State, then "the State shall distribute the amount to the family."42 U.S.C. § 657(a)(2)(B)(i)(II)(cc) and (a)(2)(B)(ii)(II)(cc).
"Courts have allocated support arrearage accruing during the time of actual public assistance is awarded to the State, with all other arrearage accruing to the support recipient. This methodology was utilized by the court in allocating arrearages in Fear v. Fear, 12 S.M.D. 64 (1998); Correa v. Rosa, 10 S.M.D. 73, 76-77 (1996); Carnierov. Brevetti, 10 S.M.D. 65 (1996) (State failed to provide evidence of the amount of AFDC paid); Alicea v. Villafane, 10 S.M.D. 40 (1996) andMcCulloch v. McCulloch, 6 S.M.D. 120 (1992).
Section 17-578(b)-2(b) of the Regulations of Connecticut State Agencies provides that on discontinuance of public assistance `current support payments shall be distributed to the custodial relative of record on the date of discontinuance, for the benefit of the children named in the child support order.'"[1] McBride v. Singleton, 13 S.M.D. 267,2000 Ct. Sup. 693 (1999). See also Walton v. Bass, 14 S.M.D. ___ (2000);Busanet v. Plantier, supra, 13 S.M.D. 278; Tharau v. Koutroumanis, 13 S.M.D. 161, 170 n. 14; Thibault v. Thibault, 10 S.M.D. 313 (1996); Radlov. Radlo, Superior Court, Judicial District of Windham at Putnam, doc. no. 42398 (Martin, J., May 29, 1996) motion for reconsideration denied (June 11, 1996); Ocalewski v. Ocalewski, 8 S.M.D. 166 (1994). Any CT Page 13251 additional public assistance paid to the family may be recoverable by the State pursuant to General Statutes § 17b-93[2] as a civil debt[3], but is not includable in the support arrearage. McBride v. Singleton, supra, 13 S.M.D. 270.
While there is no corresponding Connecticut statute, there are regulations that implicitly suggest acceptance of the Federal distribution priorities. For example, Section 17b-179(m)-1(c)(4) of the Regulations of Connecticut State Agencies provides that, "[u]pon receiving notice. that a final determination to discontinue an assistance or Medicaid case has been made, [the Bureau of Child Support Enforcement] shall transfer to the custodial party's non-assistance accounts any assigned support amounts which exceed the amount of unreimbursedassistance paid to the family." (Emphasis added.) Thus, any monies collected by the State that exceed the total amount of assistance provided to an obligee will be transferred to the obligee's non-assistance account and will not be retained by the State for reimbursement once the obligee ceases receiving assistance. In so providing, the State has implicitly acknowledged that its right to reimbursement is limited by the total amount of assistance that it actually provided to an obligee.
The Child Support Guidelines more directly capture the family first principal: "In a Title IV-D case where arrearages are owing to both the state and a custodial parent, one payment order shall enter under which payments shall be distributed in accordance with Title IV-D distribution requirements. Such order shall be payable to the custodial parent until the custodial parent's arrearage is satisfied, and then to the State." Regs., Conn. State Agencies § 46b-215a-4a(b)(2). Thus the guidelines are consistent with the federal distribution scheme set forth by Congress.
The named plaintiff mother is entitled to the past due support owing at the time she commenced public assistance. The arrearage to her is found to be $1,936.00 as of January 22, 1996.
BY THE COURT
Harris T. Lifshitz Family Support Magistrate